**In re NORTH WASHINGTON CENTER LIMITED PARTNERSHIP, Debtor.**

**Bankruptcy No. 92–1–3965–SD.**

United States Bankruptcy Court,
D. Maryland,
at Rockville.

April 5, 1994.

Jeffrey L. Tarkenton, David & Hagner, P.C., Washington, DC, for New York Life Ins. Co.

Janet Nesse, Gins & Seeber, P.C., Washington, DC, for debtor.

## MEMORANDUM OF DECISION

DUNCAN W. KEIR, Bankruptcy Judge.

This matter is before the Court on NY Life's Motion for Relief from the automatic

stay under Section 362(a) to vacate the stay to permit the secured creditor, who holds the deed-of-trust upon the property, to foreclose upon that trust. The grounds alleged by the secured creditor are that there is no equity in the property and that it is not needed for an effective reorganization because the Debtor cannot propose a confirmable plan.

### FACTUAL HISTORY

The posture of this case is important to the decision of the Court. This is a case that had a Lift Stay hearing in January of 1993, almost exactly a year before the hearing on the instant Motion. The plan terms, as the Court will discuss, were somewhat different but the issue before the Court was whether or not the debtor could confirm a plan. At that time, this Court found that the plan that was proposed by the debtor would not be confirmable, but that the Court could not say there was no plan or amendments to the proposed plan, that would make it confirmable. For this reason the Court could not and did not find that the property was not needed for an effective reorganization.

A similar finding was made by this Court on a different legal issue in July of 1993. At that point, the Debtor's first amended disclosure statement was before the Court for approval. The Court denied approval of the amended disclosure statement, finding that the proposed plan contained provisions that did not evidence a confirmable plan, but with leave to amend the disclosure statement. Again, the Court did not find, at that time, that the Debtor was unable to propose any confirmable plan.

The Debtor filed a second amended disclosure statement and proposed the following classification and treatment relevant to NY Life's Motion Relief for Stay:

> **Class III: New York Life Insurance Company.**
>
> This Creditor holds a promissory note and associated deed of trust and amendments thereto dated February 17, 1987. The claim is secured by a first trust on the Property. The original face amount of this claim was Seven Million Two Hundred Thousand Dollars ($7,200,000.00), plus interest, attorneys' fees and other costs.

The approximate amount due at this time is Six Million Nine Hundred Fifty Thousand Dollars ($6,950,000.00) plus accrued fees and costs. These fees and costs will only be part of the claim if the court determines that the value of the property exceeds the value of the Lien of New York Life. The collateral for this lien includes both the building as well as any cash collateral.

Payments to this creditor will continue under the cash collateral Order entered by this Court until confirmation. Beginning with the first month after entry of an Order of Confirmation, payments will be adjusted to conform to the terms of the confirmed Plan. The entire secured portion of the claim, as determined by the Court at confirmation, will be placed on a thirty (30) year amortization schedule, and will bear interest at a market rate, which the Debtor believes is seven percent (7%), with the balance due in full seven (7) years from the entry of a Final Order of Confirmation (henceforth the "Due Date"). Payments will be made monthly. This class of claims will also receive the first Thirty Four Thousand Dollars ($34,000.00) recovered on account of the engineering/architecture claim described above. The balance of this claim will be treated as a Class V Unsecured Creditor.

This creditor will also receive an equity interest in the building of 20% to be calculated on the Due Date as follows:

a. If the building is sold to a third party purchaser in an arms length proceeding, at any time, whether at or before the Due Date, this creditor will receive 20% of the difference between the sale price and the sum of the lien paid at settlement, all settlement costs and expenses including real estate commissions, all cash contributions made by the principals subsequent to Confirmation, and any paydowns of principal subsequent to confirmation.

b. If the building is refinanced, or the loan is paid off in some other way, at the payoff date, or the Due Date, whichever is earlier, the Debtor shall obtain an MAI appraisal from an appraiser chosen by the

Debtor with the agreement of the creditor, such agreement not to be unreasonably withheld. The appraiser shall be instructed to use the same general formula, approach and assumptions as those used in the appraisal obtained by this creditor during the Chapter 11 proceedings. The creditor will receive 20% of the difference between the appraised value of the building and the sum of the lien balance, all cash contributions made by the principals subsequent to confirmation, and all pay-downs of principal made by the principals subsequent to confirmation.

This class of claims is impaired.

### Class IV: Unsecured Trade Creditors With Recourse to the General Partners.

This class of claims totals approximately One Hundred Thirty–Four Thousand Dollars ($134,000.00), consisting primarily of subcontractors and other trade creditors that did work on the building. These are general creditors with common-law rights against the general partners. Debtor expects to do business with these creditors on an ongoing basis on ordinary course of business credit terms. Debtor has approximately thirty (30) such creditors, of which approximately twenty-five (25) have claims of less than $1,000.00. For reasons of recourse status, trade creditor identity, and administrative convenience, this class of creditors has been classified separately from the unsecured deficiency claim of NY Life. These creditors will receive a pro rata share of a lump sum payment by the principals of Eighty Thousand Dollars ($80,000.00) thirty (30) days after entry of a Final Order of Confirmation. This class of claims is unimpaired.

### Class V: Unsecured Balance of New York Life Claim.

This class of creditors consists of the unsecured balance of the Class III claim. This was a non-recourse loan, so this creditor has no claims against the general partners of the Debtor. This class of claims is estimated at approximately One Million Nine Hundred Thousand Dollars ($1,900,-000.00). This figure may be higher or lower depending upon what value the Court places on the building at confirmation. This creditor will receive payment as follows: Fifty Thousand Dollars ($50,-000.00) from the general partners on the Confirmation date. The net recovery from the engineering/architecture claim will be used to replenish partnership reserves until they total Two Hundred Thousand Dollars ($200,000.00). Any balance of that claim will then be paid to this class of claims. If proceeds of the suit are not available, net operating income after payments to the Class III creditor will be used to replenish partnership reserves until they total Two Hundred Thousand Dollars ($200,000.00). After that point, all net operating income will be paid to this creditor until the Due Date. This class of claims is impaired.

## DISCUSSION

The Court now has before it NY Life's Second Motion for Relief from Stay. In reaching its findings, the Court relies upon the second amended plan which has been filed into evidence as Defendant's Exhibit 4, as augmented by the testimony of one of the witnesses for the debtor, in which it was testified that the partners of the Debtor would contribute an additional $200,000, not reflected in Exhibit 4, which would be used to fund tenant fit-up expenses, as necessary. The projections prepared by the debtor did not have an expense item for tenant fit-up. The testimony was that tenant fit-up would be paid, to the extent necessary, from this additional equity injection of $200,000 which would not be invested on the effective date of the plan, but paid as needed over the period of the plan.

The parties have stipulated that the real estate which is the Movant's collateral has a value of $5,000,000.00, for purposes of today's hearing. Although there may be some dispute about some pre-petition charges and interest, there is approximately $7.2 million of debt secured by the property, so there is clearly no equity. Accordingly, the creditor has met its burden concerning that issue. It is the burden of the debtor, to prove that the property is needed for an effective reorganization. 11 U.S.C. § 362(g).

The Debtor must show not merely that it is conceivable that there could be an effective reorganization for which this property would be needed; but that the property is essential for an effective reorganization *that is in prospect.* *United Savings Assoc. v. Timbers of Inwood Forest*, 484 U.S. 365, 375, 108 S.Ct. 626, 633, 98 L.Ed.2d 740 (1988). (Emphasis in original). The Supreme Court further stated that the Debtor is required to show that there is "a reasonable possibility of a successful reorganization within a reasonable time." *Id.* The Supreme Court noted that while bankruptcy courts demand less detailed showings during the four months in which the Debtor is given the exclusive right to put together a plan, see 11 U.S.C. §§ 1121(b), (c)(2), even within that period lack of any realistic prospect of effective reorganization will require § 362(d) relief. *Id.*

The Debtor filed for bankruptcy on July 2, 1992, and over 14 months have elapsed without an approved disclosure statement and confirmed plan. The debtor's burden is to show that there is a reasonable possibility of a successful reorganization within a reasonable time.

In response to a question by the Court, the Debtor by Counsel, stated that the proposed plan is the best that the Debtor can put forward for confirmation. Accordingly, if this Court finds that this plan could not be confirmed, the Court must conclude that the property is not needed for an effective reorganization because there is not a reasonable possibility of a successful reorganization within a reasonable time. NY Life has raised various grounds upon which this Court could find that the Debtor's plan would not be confirmed.

NY Life alleges that the Debtor has separately classified claims without a reasonable basis; the Debtor has artificially impaired one class for the purpose of satisfying the cramdown requirements; and that the plan is not fair and equitable as required by § 1129(b).

In the Debtor's Second Amended Disclosure Statement, the Debtor separated unsecured claims into two classes. This Court must determine whether Debtor's separate classification has a reasonable basis. If a debtor manipulates the terms of its plan for the sole purpose of securing confirmation, then the classification may not be allowed.

Section 1122 requires substantial similarity between claims that are placed in the same class. It does not, however, require that all substantially similar claims be placed within the same class, and it grants some flexibility in classification of unsecured claims. Nonetheless, there is a limit on the debtor's power to classify claims. *Travelers Ins. Co. v. Bryson Properties, XVIII*, 961 F.2d 496, 502 (4th Cir.1991). If the plan unfairly creates too many or too few classes, if the classifications are designed to manipulate class voting, or if the classification scheme violates basic priority rights, the plan cannot be confirmed. *Id.* See also, *John Hancock Mutual Life Ins. Co. v. Rte. 37 Business Park*, 987 F.2d 154 (3d Cir.1993).

The reasons given by the Debtor for placing the trade creditors in a separate class are not persuasive, in light of the evidence presented, as to allow the very different outcome that would result. The Debtor asserts that the Plan simply creates an administrative convenience class. The Court has heard nothing that would substantiate any administrative convenience. Very few claimants remain to be paid in Class 4 and it does not appear that the classification will save any significant costs for soliciting ballots, or administering dividends. The Court can't create a finding of administrative convenience out of whole cloth. No evidence was presented upon which to justify the separate classification for administrative convenience.

In addition, the Debtor argues that the trade creditors in Class 4 might not continue to do business with this Debtor, if they were not given a greater return than they could have been given if there were a combined class of all unsecured claimants. However, the testimony was that the trade creditors are replaceable, although there may be some possible advantages to using these trade creditors because they are familiar with the building. This possibility of a unquantified amorphous future advantage cannot justify the dramatically inequitable treat-

ment of unsecured creditors resulting from this classification.

■ NY Life has clearly indicated that it is not going to vote yes for the Plan presently proposed by Debtor. But for the separation of the NY Life's unsecured claim into Class 5, a combined class of unsecured claims would reject the plan, by virtue of NY Life's negative vote. NY Life holds more than two-thirds of the amount of unsecured claims. 11 U.S.C. § 1126(c). No other class is impaired and thus the plan could not be confirmed. 11 U.S.C. § 1129(a)(10).

This Court finds that the claims are separately classified for the sole purpose of creating a class of impaired creditors (Class 4) that would vote for the plan, in order to satisfy the requirement of Section 1129(a)(10). The evidence supports no other basis for separate classification. For this reason, this Court has to find that the classification in the present proposed plan is not acceptable.

■ Assuming *arguendo,* that the Debtor had established a reasonable basis for its separate classification of NY Life's unsecured claim, this Court finds that the Debtor's treatment of the Class 4 unsecured claims constitutes artificial impairment. Confirmation of a plan where the Debtor engineers the impairment of the only approving class "so distorts the meaning and purpose of Section 1129(a)(10) that to permit it would reduce (a)(10) to a nullity." *In re Windsor on the River Assoc. Ltd.,* 7 F.3d 127, 131 (8th Cir.1993). The Debtor proposes to pay Class 4 creditors 80% of their claims, but according to the Debtor's testimony read into the record, the Debtor has absolutely no reason for this impaired treatment, and could pay the creditors 100% of their claims. This Court finds that the Debtor has artificially impaired Class 4 for the purpose of securing acceptance by one impaired class.

■ Finally, if the classification and treatment proposed by the Debtor were permissible, this Court could confirm a plan under Section 1129(b) ("cramdown") only if the Plan does not discriminate unfairly and is fair and equitable. 11 U.S.C. § 1129(b)(1).

The debtor proposes to pay eighty cents on the dollar, cash on the barrel head, to the Class IV unsecured claims. The plan provides for a $50,000.00 payment (approximately 2.6%) to the Class V unsecured claim. The only additional treatment offered to the Class V claim is a right to future operating profits or proceeds of litigation, which right is subordinated to replenishment of a "partnership reserve" and highly speculative, particularly in light of the questionable feasibility of this plan.

While this Court is not grounding its decision in this case upon a finding that the plan is not feasible, the facts demonstrate that the feasibility is at best very suspect. The funding of the plan testified to and presented by exhibits is one that has no room for anything to go wrong. Indeed a number of potential expenses are not considered by the Debtor in its projected costs. For example, there were no legal fees projected for litigation which is outstanding and which the plan contemplates will be continued in order to produce proceeds dealt with under the plan. There are no legal fees projected for the remainder of the bankruptcy case.

Although the amendment to the plan in open Court will provide $200,000.00 for tenant improvements, a category of expense for which the Debtor had budgeted no dollars in its original projections, that amount appears to be at best a bare minimum. According to the testimony, $200,000.00 is the projected costs of tenant fit up over the life of the plan if 70% of the present tenants in the building renew their present leases upon expiration and there is a cost no greater than $5.00 per square foot for refitting spaces under such roll over leases. It was admitted that a higher per square foot fit up cost would be needed if a new tenant had to be located into the building. There was credible testimony, based upon a market wide analysis (not restricted to this building) that only 50% of tenants could be expected to roll over.

■ In addition, recent performance figures show that the property has not always produced sufficient income to pay the expenses which the proposed plan would require. That proposed expense budget would

increase, if this Court were to find that the market rate of interest on the secured claim (Class III) must be greater than the 7% provided for in the plan. The testimony of the expert, Donald P. Zivitz, on behalf of NY Life, was that 9.648% would be the appropriate rate of interest in the market place for a loan of the type which the Class III claim under the plan would represent. The Court was persuaded by Mr. Zivitz's testimony that this indeed is a conservative rate for that type loan and that the Debtor's 7% treatment is insufficient. Mr. Zivitz testified that a real estate loan of that type which this would represent, if made with a 75% loan to value ratio as required by most lenders in the market place, would be available at 2% over the treasury rate, or 7.66%. Because the Class III treatment has no additional collateral or initial paydown, the loan would be at 100% loan to value as to the collateral. The loan would be at a 30 year amortization with a 7 year balloon payment.

Any increase in the rate of interest which must be paid on the Class III claim would require an increase in the expense side of the Debtor's projections, for which there appears to be no excess income to fund. At the very least, these facts demonstrate that the subordinated right to future operating income cannot be given a positive value when considering whether or not the treatment of the Class V claim is fair and equitable.

For these reasons, this plan, as proposed, unfairly discriminates between claims holding the same priority and is not fair and equitable, and thus fails to comply with § 1129(b)(1).

In weighing all of these factors, this Court finds that although this plan is the best effort of the Debtor (as conceded by that Debtor), it cannot be confirmed. Therefore, the Debtor does not have a reasonable possibility for a successful reorganization. Because the Debtor has no equity in the property and cannot use the property for an effective reorganization, the stay under Section 362(a) as to New York Life Insurance Company is vacated to permit the company to go forward and exercise its state law rights under state law and under its loan documents. 11 U.S.C. § 362(d)(2).