**In re Robert H. SCHWARZMANN, Leona M. Schwarzmann, Debtors.**

**Bankruptcy No. 93–15307–AT.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Jan. 25, 1995.

Robert O. Tyler, Alexandria, VA, for Debtors.

David S. Musgrave, Baltimore, MD, for First Union.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

Hearing was held on December 8, 1994, on the confirmation of debtors' First Amended Plan of Reorganization dated October 18, 1994, and on creditor First Union National Bank of Virginia's Amended Plan of Reorganization dated November 10, 1994. Each party sought confirmation of their own plan and denial of confirmation of the other. The court took the matter under advisement.

After hearing the respective arguments of counsel and after reviewing proposed findings of fact and conclusions of law submitted by both counsel, the court finds that the debtors' plan complies with the applicable provisions of the bankruptcy code and is preferable to First Union's plan. Accordingly, the court will enter an order confirming debtors' plan.

### Findings of Fact

Debtors Robert H. and Leona M. Schwarzmann own and operate A–Abart Enterprises, Inc, which is also known as A & R Tool Rental. A–Abart services the construction industry with rental tools and equipment and operates out of several different locations on real property owned by debtors. The property includes: (1) the Merrifield property located at 8231–35 Lee Highway, Merrifield, Virginia; (2) the Chantilly property located at 43925 Lee Jackson Highway, Chantilly, Virginia; (3) the Manassas property located at 9029 Euclid Avenue, Manassas, Virginia; and, (4) the Gallows Road property located at 2754 Gallows Road, Vienna, Virginia. First Union holds a first deed of trust against all the property which secures debtors' indebtedness to First Union as a successor in interest to Dominion Bank in the amount of approximately $4,230,000.00. The debt is also secured by a junior lien on debtors' residence, a junior lien on the assets of A–Abart, and municipal bonds.

First Union's promissory note dated January 4, 1990, is in the amount of $4,700,000.00 and is secured by first deeds of trust against the Merrifield, Gallows Road, and Manassas properties. The note was payable by a two million dollar curtailment prior to January 4, 1991, and thereafter by annual principal payments of $125,000.00 each. The two million dollar curtailment was not made when due; accordingly, the parties amended the note and executed an Allonge to Deed of Trust Notes dated June 28, 1991, which required either a one million dollar curtailment by January 2, 1992, and a $1,125,000.00 curtailment by June 30, 1992, or a $2,250,000.00 curtailment no later than June 30, 1992. At this time, First Union required as additional security a junior security interest in the assets of A–Abart, a second deed of trust on debtors' residence, and a first deed of trust on the Chantilly property.

After the principal curtailments required by the Allonge to Deed of Trust Note were not made, debtors and First Union entered into a Forbearance Agreement where First Union agreed to forbear from taking legal action to collect the debt until May 1, 1993.

First Union scheduled a foreclosure sale for the Gallows Road property in late December 1993. Debtors filed a voluntary Chapter 11 petition on December 28, 1993, which stayed the foreclosure.

Debtors have made monthly postpetition interest payments to First Union at the contract rate.

First Union and debtors each submitted disclosure statements and plans of reorganization. This court approved both disclosure statements. First Union voted against debtors' plan and voted in favor of its own plan. No other creditors voted in favor of First Union's plan. All other classes of creditors accepted debtors' plan. No creditor expressed a preference for First Union's plan; however, four creditors expressed a preference for debtors' plan.

As of December 7, 1994, the balance due to First Union was $4,639,000.00. Based on the testimonies at the December 8, 1994, hearing, the value of the collateral is as follows: [1]

| | | |
|---|---|---|
| a. | Merrifield | $2,100,000.00 |
| b. | Gallows Road | 927,000.00 |
| c. | Chantilly | 900,000.00 |
| d. | Manassas | 936,000.00 |
| e. | Debtors' residence (net of 1st trust) | 548,000.00 |
| f. | Municipal Bonds | 82,000.00 |
| g. | A–Abart equipment | 1,600,000.00[2] |
| | (net of purchase money financing) | |
| | TOTAL | $7,093,000.00 |

At the confirmation hearing debtors and First Union presented cash flow projections showing implementation of their respective plans. Debtors' cash flow projection contemplates the sale of their Gallows Road property because there would be no adverse tax consequences to this sale. Payment of the balance of First Union's claim would be accomplished through refinancing. First Union's cash flow projection provides for the sale of the Gallows Road, Manassas, Chantilly, and Merrifield properties. The projection does not include possible tax consequences to any sale. Debtors' accountant testified that debtors would incur $600,000.00 in capital gains tax if the Merrifield property were to be sold as required by First Union's plan.

### Respective Plans

*Debtors*

Debtors' plan divides creditors into four classes:

1. Class One consists of First Union's claim which debtors propose to pay in full by continuing monthly interest payments at the contract rate, by making a one

---

1. At the hearing, debtors accepted, for purposes of plan confirmation, First Union's appraised values of the real property securing the debt.

2. First Union's appraisal of A–Abart's equipment was not offered into evidence. Debtor Robert Schwarzmann opined that the value of the equipment was between four and five million dollars. Debtor also proffered that First Union's appraisal listed the property between two and three million dollars. Accordingly, for the purpose of this confirmation determination, the court finds that the value of the equipment is at least $2,500,000.00. The equipment is subject to senior liens in the amount of $900,000.00. Accordingly, the value of First Union's security interest is $1,600,000.00. The court notes that First Union has not permitted A–Abart to invest the proceeds of equipment and inventory sold to third parties, and thus A–Abart has not been able to replace worn-out equipment.

million dollar curtailment [3] within one year from the effective date of the plan upon which First Union must release its lien on A–Abart's equipment, and by paying the balance of the First Union claim within two years of the effective date. If debtors fail to make any of these payments, First Union may resort to any of its remedies under the loan documents.

2. Class Two consists of seven other secured claimants who are to be paid in full in accordance with terms of existing loan documents but who must obtain Bankruptcy Court approval for any lien enforcement actions; in addition, Child Development Center is required to accept continued amortization at the rate set forth in debtors cash flow projection even though its loan matured preconfirmation.

3. Class Three consists of one general unsecured claimant with an insider claim of $14,000.00.

4. Class Four consists of the contingent claims of A–Abart's creditors which debtors have personally guaranteed. Such claimants must seek bankruptcy court approval before undertaking any collection activity against debtors.

*First Union*

First Union's plan divides creditors into twelve classes.

1. Class One consists of allowed secured real property tax claims

2. Class Two consists of the allowed secured claim of First Union. The plan provides for payment of the claim by:

    a. Liquidation of the municipal bonds and application of proceeds against claim.

    b. Payment of $50,000 for partial payment of attorneys' fees, appraisal fees, and environmental report fees pursuant to the forbearance agreement.

    c. Payment of interest on the first day of each month at the contract rate.

    d. Payment of all rents payable to debtors on the Merrifield property, the

Gallows Road property, the Chantilly property, and the Manassas property.

    e. Sale of the real property encumbered by First Union's deeds of trust and payment of net proceeds to First Union up to the full amount of First Union's claim.

    f. Extension of the maturity date of First Union's claim to two years following the effective date of the plan

    g. Forbearance by First Union from enforcement action as long as there is no default.

8. Consent to the appointment of a receiver at First Union's discretion.

3. Classes Three through Nine consist of the other secured claims. Each of these classes is allegedly unimpaired because each is to be paid in full in accordance with the terms and conditions of the applicable loan documents or such other terms and conditions as may be agreed to between debtors and claimant. Each secured claimant retains its security interest and lien. If debtors default, each claimant may enforce its rights against the collateral.

4. Class Ten consists of an insider claim of $14,000.00 which will be paid in full within two years following the effective date of the plan.

5. Class Eleven consists of the holders of guarantee claims against debtors. Under the plan, debtors' personal guaranties would remain in full force and effect.

6. Class Twelve consists of debtors.

First Union amended its plan at the confirmation hearing to permit the filing of objections to First Union's claim within thirty days after the effective date. The plain also provides for the appointment of First Union's counsel, David S. Musgrave, as attorney-in-fact for the purpose of taking any action necessary to sell debtors' properties. The plan also requires a 20–day notice of any sale. The plan provides deadlines for the sale of each property: the Merrifield property, the Gallows Road Property, the Manassas property, and the Chantilly property must be

---

**3.** Debtors stated that they intended to make the one million dollar curtail by selling their Gallows Road property and by refinancing the balance.

sold within twelve months following the effective date, and the residence must be sold within eighteen months after the effective date. If any of the properties are not sold within the specified times, First Union may foreclose its deed of trust on the unsold property. The sale of the Chantilly property would be subject to a triple net lease with A–Abart for at least $8,000.00 per month for a term of not more than five years.

### Position of Parties

#### Debtors

Debtors argue that First Union's plan would deprive A–Abart of the premises from which it conducts most of its business because the property upon which its operations are located would have to be sold under the plan. Debtors allege that this would prevent A–Abart from meeting its ongoing expenses, deprive debtors of income, and unnecessarily generate large capital gains tax liabilities for debtors which could only be paid by further liquidation of property, resulting in additional taxes and sales. Debtors claim that this extensive liquidation is not necessary for debtors' effective and feasible reorganization and is in violation of 11 U.S.C. § 1129(a)(11).

#### First Union

First Union argues that debtors' plan fails to satisfy 11 U.S.C. § 1129(a)(10) because debtors do not have one impaired class accepting their plan. The bank alleges that debtors have artificially impaired Classes Two and Four by requiring that they seek this court's approval before commencing enforcement action in the event of a default.

Furthermore, First Union argues that the plan fails to satisfy 11 U.S.C. § 1129(a)(1) because the requirement of court approval in the event of default is in essence a continuation of the automatic stay after confirmation. The bank claims that pursuant to 11 U.S.C. § 1141(b), confirmation of a plan vests all

property of the estate in the debtor and that under § 362(c)(1), the automatic stay is terminated. Thus, First Union concludes that debtors' plan does not comply with the applicable provisions of the bankruptcy code.

First Union also argues that the plan violates 11 U.S.C. § 1129(a)(11) because it is not feasible. The bank states that debtors had agreed to sell a portion of their property and consolidate A–Abart's operations in 1990 to meet the first curtailment and that they had been unable to do so. In addition, First Union alleges that debtors have been unable to refinance their debt in the past and have failed to demonstrate how they will be able to refinance under this plan.

### Conclusions of Law

Pursuant to 11 U.S.C. § 1129(a), the court may confirm a proposed Chapter 11 plan only if all of the elements of 11 U.S.C. § 1129 are met. See 11 U.S.C. § 1129(a). One such criterion found in § 1129(a)(8) requires each class to accept the plan or be unimpaired under the plan. However, under 11 U.S.C. § 1129(a)(10) and 1129(b), a bankruptcy court can confirm a plan of reorganization over the objection of an impaired class if any impaired class accepts and if the plan is fair and equitable.[4] First Union argues that debtors' plan fails both requirements because no impaired class has accepted the plan and because the plan is not feasible and is, therefore, not fair.

#### Impairment

Pursuant to 11 U.S.C. § 1124, *any* alteration of the legal, equitable, or contractual prepetition rights of a holder of a claim constitutes impairment. See In re Barrington Oaks Gen. Partnership, 15 B.R. 952, 959–63 (Bankr.D.Utah 1981). However, just as a plan may not create an artificial classification, *see Travelers Ins. Co. v. Bryson Properties, XVIII (In re Bryson Properties, XVIII),*

---

**4.** Pursuant to § 1129(a)(10), a court may approve a plan "[i]f a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider." 11 U.S.C. § 1129(a)(10).

Section 1129(b)(1) reads in relevant part "... if all of the applicable requirements of subsection

(a) of this section other than paragraph (8) [paragraph requiring each class to accept or be unimpaired] are met with respect to a plan, the court ... shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable...." 11 U.S.C. § 1129(b)(1).

961 F.2d 496, 502 (4th Cir.), *cert. denied,* 113 S.Ct. 191 (1992), a plan may not artificially impair a class for the sole purpose of achieving a cram-down. *See Windsor on the River Assocs. Ltd. v. Balcor Real Estate Fin. (In re Windsor on the River Associates, Ltd.),* 7 F.3d 127, 131–32 (8th Cir.1993).

■ Debtors argue that Class Two is impaired for two reasons: creditors must obtain Bankruptcy Court approval for any lien enforcement action, and one claimant, Child Development, must accept continued amortization of its loan at the rate set forth in debtors' cash flow projection even though its loan matured preconfirmation.

Debtors have given absolutely no reason for requiring creditors to obtain court approval before lien enforcement. In addition, First Union is not required to obtain court approval prior to foreclosure if debtors default under the plan. Therefore, the court finds that this requirement merely attempts to artificially impair the class so as to insure acceptance by at least one impaired class. *See In re North Wash. Cent. Ltd. Partnership,* 165 B.R. 805, 810 (Bankr.D.Md.1994). This artificial impairment "so distorts the meaning and purpose of Section 1129(a)(10) that to permit it would reduce (a)(10) to a nullity." *In re Windsor on the River Assocs., Ltd.,* 7 F.3d at 131. Accordingly, the court will strike the approval requirement from debtors' plan.[5]

■ However, this finding is not necessarily fatal to confirmation of debtors' plan because debtors also allege that Child Development is impaired under its plan. Debtor Robert Schwarzmann testified at the confirmation hearing that Child Development's loan had matured preconfirmation. The bank did not rebut this testimony. Under debtors' plan Child Development must accept loan amortization at the rate set forth in the cash flow projections. This alteration of Child Development's legal and contractual prepetition right constitutes impairment under 11 U.S.C. § 1124. Child Development,

an impaired claimant, voted in favor of debtors' plan. Accordingly, an impaired class has accepted debtors' plan, and the plan can be crammed down and confirmed pursuant to § 1129(a)(10) if it meets the requirements of § 1129(b).

*Fair and Equitable*

■ Under the "fair and equitable" requirements of § 1129(b), the holder of a secured claim must retain the liens securing its claim, *see* § 1129(b)(2)(A)(i)(I), and must receive "deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property." 11 U.S.C. § 1129(b)(2)(A)(i)(II); *See also In re Bryson Properties XVIII,* 961 F.2d at 500.

First Union will at all times retain liens securing its claim to the extent of the allowed amount of its claim. The interest payable[6] to the bank has increased during the pendency of the Chapter 11 case and is fair. In addition, debtors' plan provides for full payment of First Union's claim within two years, a mere six months longer than payment under First Union's plan. Based on the testimony at the hearing, this sales period is reasonable. First Union's claim will be paid in full by deferred cash payments totalling at least the allowed amount of First Union's claim.

With a debt-to-value ratio of approximately 4.7/7.1, First Union has an equity cushion over 50 percent. Even after the one million dollar curtailment is made and the lien on A–Abart's equipment is released, the debt-to-equity ratio will not be substantially changed. In addition, the value of First Union's security is unlikely to diminish. Finally, because debtors' plan allows First Union to exercise its remedies, including foreclosure, under the loan documents, the bank is protected in the event of plan failure.

---

5. Since the court has removed the approval requirement from debtors' modified plan, I do not need to address First Union's argument that this provision violates provisions of the bankruptcy code.

6. The rate is a floating commercial rate plus 1 percent.

Experts testified as to the feasibility of both plans. Based on the testimony, there is no reason for the court to find that payment of First Union's claim within two years, a mere six months longer than payment under First Union's plan, is unfeasible. Furthermore, other creditors believe debtors' plan is feasible. The court may consider creditors' preferences without regard to whether or not the creditors are impaired. *See In re Rolling Green Country Club*, 26 B.R. 729, 735 (Bankr.D.Minn.1982). Six creditors have expressed a preference for debtors' plan. First Union is the only creditor to vote for its own plan.

The court also notes policy reasons for approving debtors' plan instead of the bank's competing plan. The philosophy of the bankruptcy code is to preserve economic units and, therefore, reorganization is preferable to liquidation. *See In re Oaks Partners Ltd.*, 141 B.R. 453 (Bankr.N.D.Ga.1992). The bank's plan requires liquidation of debtors' property which could result in the liquidation of debtors' business and further liquidation on the part of debtors. Also, debtors' accountant testified that debtors would incur $600,000.00 in capital gains tax if the Merrifield property were to be sold as required by the First Union plan, which taxes could only be paid by further liquidation of property resulting in additional taxes and sales.

Because debtors' plan has been accepted by an impaired class and "does not discriminate unfairly, and is fair and equitable[,]" the court will enter an order confirming debtors' plan submitted on October 18, 1994, as modified by this memorandum opinion. Under these modifications, Class Two (A) consists of the secured claimants who are to be paid in full in accordance with terms of existing loan documents and whose claims have not matured. The requirement of court approval prior to lien enforcement is stricken from debtors' plan; thus, Classes Two (A) and Four are unimpaired. Class Two (B) consists of the secured claim of Child Development, an impaired claimant, which is required to accept continued amortization at the rate set forth in debtors' cash flow projection even though its loan matured preconfirmation. Because these modifications are in response "to and a logical outgrowth of issues raised by the creditor" and relate to an issue which notice and opportunity for a hearing was given, this court may consider them as part of the plan. *See Crestar Bank v. Walker (In re Walker)*, 165 B.R. 994, 1000 (E.D.Va.1994).

The court directs debtors' counsel to submit a confirmation order consistent with this opinion. Upon receipt of an appropriate order, the court will enter the order confirming debtors' plan as modified and denying confirmation of First Union's plan.